IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MĀLAMA MĀKUA, a Hawai`i non-profit corporation, | ) ) ) | CIVIL NO. 08-00327 SOM/LEK |
| Plaintiff, | ) ) ) | ORDER CLARIFYING REMEDY FOR DEFENDANTS' PREVIOUSLY DETERMINED BREACH OF PARAGRAPH 8(B) OF THE |
| vs. | ) ) ) | SETTLEMENT AGREEMENT; ORDER |
| ROBERT GATES, Secretary of Defense; and PETE GEREN, Secretary of the United States Department of the Army, | ) ) ) ) ) | DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER CLARIFYING REMEDY FOR DEFENDANTS' PREVIOUSLY DETERMINED
BREACH OF PARAGRAPH 8(B) OF THE SETTLEMENT AGREEMENT; ORDER
DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT;
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        Defendants entered into an agreement with Plaintiff

Mālama Mākua to identify high priority sites for unexploded

ordnance clearance at the Makua Military Reservation on Oahu,

Hawaii.  The identification was to be made no later than October

2002.  After years of waiting for Defendants to make that

identification, Mālama Mākua came to court under a different case

number to enforce its rights under the agreement.  In the Spring

of 2008, this court ordered Defendants to identify the sites no

later than April 2008.  This court's focus was on ending the

delay in identifying the sites.  Although Defendants noted that

they needed at least six months to analyze information acquired

since December 2002 and to seek public comment on sites

identified based on that information, they provided no basis for that time frame.  Mindful of the extraordinary delay that had already occurred, this court ordered Defendants to identify the sites in about a month.  Defendants assumed from that time frame that they did not have to take into account information obtained since December 2002 or public comment based on such information. Defendants did identify sites in April 2008, based on information that was many years old.

In July 2008, Mālama Mākua filed the present action, seeking a declaration that Defendants had breached the prior agreement by failing to consider up-to-date information and by failing to obtain new public input in identifying the high priority sites.  In light of the apparent confusion resulting from the deadline the court set, this court declines to declare that Defendants breached their agreement in April 2008.  However, this court now clarifies that Defendants must take into account all information currently available in identifying high priority sites to be cleared of unexploded ordnance.  Defendants must comply with the terms of the Settlement Agreement and Stipulated Order in identifying the sites, and they must do so in accordance with the timetable set forth in their Notice of Filing of Timetable for Identifying Additional High Priority Sites at Makua Military Reservation (Jan. 14, 2009) ("Timetable").  In identifying the sites, Defendants must "provide meaningful

opportunities for the people of the Wai`anae Coast to participate in identifying and prioritizing these areas" and must "focus on increasing access to cultural sites."

This order clarifies this court's previous orders regarding Defendants' responsibilities concerning identification of high priority sites for unexploded ordnance clearance. The court otherwise denies Mālama Mākua's motion to enforce the settlement agreement. Defendants' motion for summary judgment is denied.

II.     BACKGROUND FACTS.

This dispute originally came before this court in Civil Number 00-00813 SOM on December 20, 2000. The major issue presented to this court was whether Defendants had to prepare an environmental impact statement ("EIS") addressing the effects of military training with live ammunition at the Makua Military Reservation ("MMR").

The original case was settled on October 4, 2001, with the parties entering into an extensive Settlement Agreement and Stipulated Order ("Settlement Agreement"). As part of the Settlement Agreement, the Army agreed to prepare an EIS and to take the following actions with respect to unexploded ordnance ("UXO") at MMR:

> within one year of the date of settlement, [Defendants,] the 25th ID (L)[,] shall identify additional, high priority areas at MMR for UXO clearance, with the focus on

3

increasing access to cultural sites.  The 25th ID (L) shall provide meaningful opportunities for the people of the Wai`anae Coast to participate in identifying and prioritizing these areas, including releasing draft plans for public review and holding meetings at which the public will have the chance to ask questions, raise concerns and make comments and suggestions.  After identifying these additional, high priority areas, the 25th ID (L) shall make good faith efforts promptly to develop a plan and secure specific funding for the clearance of UXO from these areas to provide safe, controlled access to identified cultural sites.  The clearance plan and activities are subject to any limitations imposed by FWS in ESA section 7 consultation, safety requirements, available funds specifically for UXO clearance, and available and appropriate technologies and methods.

Settlement Agreement ¶ 8(b).

On September 24, 2002, Defendants conducted a public meeting seeking public input concerning the Makua Military Reservation Cultural Site Access and Unexploded Ordinance Clearance Plan Brief.  See Declaration of Robert M. Lewis (Dec. 2, 2008) ¶ 3; Ex. C to Defendants' Concise Statement (copy of Defendant's Makua Military Reservation Cultural Site Access and Unexploded Ordinance Clearance Plan Brief).  Although Defendants were supposed to identify the high priority sites for UXO clearance by October 2002, Defendants did not meet that deadline.

On December 10, 2002, Defendants conducted another public meeting regarding UXO clearance and access to historic and culturally significant areas at MMR.  See Lewis Decl. ¶ 4; Ex. D

to Concise Statement (partial transcript of meeting).  At that
meeting, William Aila, on behalf of Mālama Mākua and others,
identified certain sites as having high priority for UXO
clearance.

On January 13, 2006, after enduring years of the Army's
noncompliance with the Settlement Agreement's requirement for
Defendants to identify high priority sites for UXO clearance,
Mālama Mākua filed a motion to enforce the Settlement Agreement.
On March 6, 2006, the motion was withdrawn.  However, Mālama
Mākua was told that it could reinstate the motion by filing an
amended notice of hearing.  See Entering Order (March 6, 2006).
More than two years later, on February 20, 2008, Mālama Mākua
filed an amended notice of hearing and a "reply" in support of
its 2006 motion.  The reply sought only the clearing of UXO and
Mālama Mākua's access to certain cultural sites.  The court
treated the "reply" as a motion and held a hearing on March 3,
2008.  At the hearing, Defendants identified the sites on Aila's
list as their high priority areas for UXO clearance.  See
Transcript of Proceedings (March 3, 2008) at 39, 44, 47.
Defendants also told the court at that hearing that, if their
identification of high priority sites had to take into account
information acquired since December 2002, as well as public
comment on that information, they would need "at least six
months."  See Transcript of Proceedings (March 3, 2008) at 54.

5

On March 11, 2008, this court ruled that, by failing to timely identify "high priority" cultural sites to be cleared of UXO, the Army had violated paragraph 8(b) of the Settlement Agreement.  See Order Enforcing 2001 Settlement Agreement (Document No. 179).  In an amended order filed on April 9, 2008, the court ordered the Army to comply with the Settlement Agreement and to make quarterly written reports to the court detailing its compliance.  Among other things, the Army was required in the first quarterly report, due April 22, 2008, to "formally identify all 'additional, high priority areas at MMR for UXO clearance,' as required by paragraph 8(b) of the Settlement Agreement."  Because the Army had indicated that it had adopted the "high priority areas" identified for UXO clearance by William Aila at the public hearing on December 10, 2002, the court required the Army to include Aila's listed areas among the Army's "high priority" sites identified for UXO clearance.  See Amended Order Enforcing 2001 Settlement Agreement (Apr. 9, 2008) (Document No. 188).

In issuing its order, the court was intent on ending the Army's extraordinary and inexcusable delay.  This court's order did not focus on the procedure to be followed in ending that delay, other than to require compliance with the Settlement Agreement.

In a separate order issued April 9, 2008, the court rejected Mālama Mākua's request to require the Army to include among the "high priority" sites newly discovered sites in Kahanahaiki Valley.  The court instead told Mālama Mākua that, if the Army failed to include those sites as "high priority" in its first quarterly report, Mālama Mākua could "comment on that decision."  See Order Granting in Part and Denying in Part Mālama Mākua's Motion to Amend Order Enforcing 2001 Settlement Agreement (Apr. 9, 2008) (Document No. 187).

On July 15, 2008, Mālama Mākua filed the present Complaint for Declaratory Judgment and Injunctive Relief.  See Complaint, Civil No. 08-00327 SOM/LEK.  This Complaint alleges that the Army violated paragraph 8(b) of the Settlement Agreement by identifying "high priority" sites without "provid[ing] meaningful opportunities for the people of the Wai`anae Coast to participate in identifying and prioritizing the[] areas, including releasing draft plans for public review and holding meetings at which the public will have the chance to ask questions, raise concerns and make comments and suggestions."  Id. (quoting Settlement Agreement ¶ 8(b)).  The Complaint also seeks the Army's identification of additional sites as "high priority."

7

III.      ANALYSIS.

          A.   This Court Clarifies its Earlier Ruling.

          This court earlier ruled:

               In interpreting the provisions of the
          Stipulated Order [, a.k.a., the Settlement
          Agreement], this court treats the Stipulated
          Order as a consent decree.  The Stipulated
          Order was agreed to by the parties and
          entered as this court's order, dissolving
          this court's earlier preliminary injunction.
          Thus, the Stipulated Order has a "dual
          character," partaking of "both a contract of
          settlement and a final judgment."  Gilmore v.
          People of the State of Cal., 220 F.3d 987,
          1000, 1001 n.17 (9th Cir. 2000) (discussing
          consent decrees and quoting Local Number 93,
          Int'l Ass'n of Firefighters v. Cleveland, 478
          U.S. 501, 519 (1986)).

               It is the contract nature of the
          Stipulated Order that governs this court's
          interpretation of its provisions.  See United
          States v. Asarco, Inc., 430 F.3d 972, 981
          (9th Cir. 2005) ("This Court has applied
          contract principles in accordance with
          Supreme Court precedent when interpreting
          consent decrees." (citing Molski v. Gleich,
          318 F.3d 937, 956 (9th Cir. 2003)).  The
          construction of contracts is governed by
          principles of local law.  United Commercial
          Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d
          853, 856 (9th Cir. 1992) (citation omitted);
          see also Boskoff v. Yaho, 217 F. Supp. 2d
          1077, 1085 (D. Haw. 2001).

Order Denying Defendants' Motion to Modify Settlement Agreement

and Stipulated Order, Civ. No. 00-00813 SOM/LEK (Feb. 2, 2006).

          Under Hawaii law, the construction and legal effect to

be given a contract are questions of law to be resolved by the

court.  See Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364,

688 P.2d 1139, 1144 (1984).  Courts therefore construe and enforce contracts, but do not make or alter contracts.  See Scotella v. Osgood, 4 Haw. App. 20, 24, 659 P.2d 73, 76 (Ct. App. 1983).

"It is well settled that courts should not draw inferences from a contract regarding the parties' intent when the contract is definite and unambiguous."  State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 323, 978 P.2d 753, 762 (1999).  Terms of a contract should be interpreted according to their plain, ordinary, and accepted use in common speech, unless the contract indicates a different meaning.  See Amfac, Inc. v. Waikiki Beachcomber Inv., 74 Haw. 85, 108-09, 839 P.2d 10, 24 (1992).  "Intent becomes a question of fact only where the language of the contract is ambiguous and casts a doubt as to the intent of the parties."  Soukop v. Snyder, 6 Haw. App. 59, 63, 709 P.2d 109, 112 (1985).

This court has already ruled that Defendants breached the Settlement Agreement in failing to identify high priority areas by the deadline set forth in the Settlement Agreement.  The issues now before this court are whether Defendants must take into account knowledge and information gained since December 2002 in making that identification, and whether Defendants must seek further public input in so identifying sites.

Defendants argue in their papers that the Settlement Agreement is unambiguous on this point, as it provides that, no later than October 2002, Defendants must identify the high priority sites for UXO clearance.  See Settlement Agreement ¶ 8(b) ("within one year of the date of settlement, [Defendants,] the 25th ID (L)[,] shall identify, high priority areas at MMR for UXO clearance, with the focus on increasing access to cultural sites.").  Defendants argue that the intent of the parties is clear from this provision and that they complied with the information and public outreach requirements in 2002.  As the parties could not have foreseen that Defendants would fail to identify the high priority sites for UXO clearance within the one-year period, Defendants contend in their papers that the parties must have contemplated that the decision on which sites would be identified as high priority would necessarily have been based on information gathered only in that one-year period.

This court is unpersuaded by Defendants' arguments and declines to grant them summary judgment under the circumstances. When the court previously determined that Defendants had breached the Settlement Agreement, the court ordered what appeared to be an appropriate remedy.  Defendants were more than five years late in identifying the high priority sites for UXO clearance and provided no detail supporting their assertion that they needed at least six months to take new information into account.  This

10

court therefore required Defendants to identify the sites in about a month.

At the time it issued its earlier ruling, the court was cognizant that Defendants might be unjustly enriched by their delay in identifying the sites if they were allowed to merely adopt Aila's list based on the limited information available to Aila in December 2002. See Small v. Badenhop, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985) ("One who receives a benefit is of course enriched, and he would be unjustly enriched if its retention would be unjust."). The court recognized that, if Defendants were allowed to identify the high priority sites in 2008 based on information available in 2002, Defendants would have gained years of noncompliance at no cost to Defendants. For example, Defendants would have had the use of the money that might have been spent clearing UXO from sites had Defendants timely identified the sites. While holding Defendants to their representations in open court by requiring them to include Aila's sites in their official list, this court expressly made Aila's list the minimum that Defendants could identify, fully intending that Defendants consider additional sites. Defendants did add a few sites not on Aila's list, but, for the most part, ignored all newly required information. To allow Defendants to continue to rely on outdated information would exacerbate their unjust enrichment.

Requiring Defendants to take into account all current information in identifying high priority sites would curb their unjust enrichment and would to some extent address their delay in complying with the terms of the Settlement Agreement.  Defendants themselves previously acknowledged that accepting Aila's 2002 list as the high priority sites "would be inappropriate . . . because so much time has passed and there's so much more information that is known about the sites."  <u>See</u> Transcript of Proceedings (March 3, 2008) at 54.  More recently, at the hearing on the present motions, Defendants repeated their understanding that taking into account information acquired since December 2002 and receiving new public comment would be appropriate. Defendants also stated that they were willing to take new information into account and to receive new public comment. Given Defendants' position, this court requires Defendants to take into account currently available information in conjunction with new public input when making the determination as to which sites should be designated as high priority for UXO clearance. In so ruling, the court is not attempting to rewrite the Settlement Agreement.  The court is instead implementing Defendants' stated position, while trying to prevent Defendants from further benefitting from their breach of the Settlement Agreement.

12

This court does not view Defendants as having breached the Settlement Agreement yet again by identifying high priority sites in April 2008 without considering post-December 2002 information.  The month-long timetable set earlier by this court was apparently viewed by Defendants as a rejection by this court of any requirement to consider new information or new public comment, given Defendants' estimate that that would require many months.  If this court was not sufficiently clear in its earlier ruling, that should not be a reason to find a party in breach of any agreement or order.

Mālama Mākua complains also about the manner in which Defendants, without any stated reasoning, added four sites to Aila's list of high priority sites.  Whether any particular site should or should not be on the list of high priority sites for UXO clearance is not an issue that the Settlement Agreement speaks to.  The Settlement Agreement requires Defendants to identify additional high priority sites with a focus on increasing public access and providing meaningful opportunities for public input.  It does not require that any particular site by included or left off of any list.  Moreover, the present clarification by this court of its earlier ruling means that an entirely new list will be forthcoming.  This court need not now decide whether the soon-to-be-superseded April 2008 list contains sites that should or should not be on the list.

The court now supplements its April 2008 orders, requiring Defendants, as set forth in the Timetable filed by them on January 14, 2009, to identify additional high priority sites for UXO clearance based on currently available information. Defendants shall complete the compilation of the list of cultural sites for publication no later than February 26, 2009. Defendants shall also conduct a second public comment period, as set forth in section 2.7 of the Timetable.  No later than June 12, 2009, Defendants shall identify the high priority sites for UXO clearance.

In so identifying the sites, Defendants must comply with the remaining requirements of paragraph 8(b) of the Settlement Agreement.  That is, in identifying the high priority sites, Defendants must focus on increasing access to those sites and must provide meaningful opportunities for the people of the Wai`anae Coast to participate in identifying and prioritizing the sites, including releasing draft plan(s) for public review and holding meeting(s) at which the public will have the chance to ask questions, raise concerns, and make comments and suggestions. See Settlement Agreement ¶ 8(b).

In this court's order of April 9, 2008, Defendants were ordered to prepare and file quarterly reports.  Those reporting requirements remain in force, except that the next quarterly report is due on February 6, 2009, rather than on January 15,

2009.  Additionally, in the October 15, 2009, quarterly report, Defendants are required to set forth a revised "good faith" plan to clear UXO from each of the sites they identified as "high priority" for UXO clearance, as well as to describe how they intend to secure funding to implement the plan.  This plan must set forth a proposed schedule for clearing UXO from each identified "high priority" site, taking into account availability of funding, as well as compliance with various laws and regulations, especially the historic preservation laws that Defendants have claimed contributed to previous delays in clearing MMR cultural sites of UXO.  If there is no reasonable and practicable way to clear a "high priority" site of UXO, Defendants may so state, but they must then describe their plans to clear the site if it subsequently becomes reasonable and practicable to do so.  For example, if Defendants need to conduct a "prescribed burn" to clear ordnance but cannot do so at this time, Defendants should describe their contingent plan to clear the site if there is an accidental fire that allows Defendants to clear UXO.

> B.   This Court Declines to Expand the Scope of this Case.

In a filing on January 16, 2009, Mālama Mākua asked this court to articulate Defendants' responsibilities under the Settlement Agreement.  In addition to the second public comment period that Defendants have indicated a willingness to conduct,

15

Mālama Mākua asked this court to order Defendants 1) to disclose any rationale for excluding sites that the public identifies as high priority; 2) to conduct public meetings at times convenient to the public; 3) to conduct public meeting(s) during the weekend of March 14-15, rather than during the week of March 16, 2009; 4) to make information available online; and 5) to provide Mālama Mākua with hard copies of all information.  These requests go well beyond the issues raised by Mālama Mākua in its Complaint in this matter and ask this court, without benefit of briefing by all parties, to determine what is necessary to comply with the terms of the Settlement Agreement.  Under these circumstances, the court declines to order Defendants to take these actions.  It may well be that Defendants will voluntarily comply with these rather modest requests.  However, this court will not now order them to do so solely to address Mālama Mākua's concern about possible future disputes.  This court adds that, in ordering Defendants to comply with the Timetable filed with this court, this court is not precluding Defendants from increasing the number of public meetings or from scheduling any meeting earlier than set forth in the Timetable (assuming reasonable notice and opportunity to participate).

In its earlier order of April 9, 2008, the court required Defendants to identify as high priority for UXO clearance Aila's December 2002 sites.  Those sites must remain a

16

high priority for UXO clearance unless the "people of the Wai`anae Coast" tell Defendants that they should consider other sites as being of a higher priority for UXO clearance.

This order does not require Defendants to actually clear any site of UXO.  Nor does the order require Defendants to designate any other specific site as being a high priority for UXO clearance.  It only orders Defendants to comply with their obligations under paragraph 8(b) of the Settlement Agreement.

     C.    Defendants Are Not Entitled To Summary Judgment on the Grounds They Assert.

At the hearing on these motions, Defendants agreed to revise the list of high priority sites for UXO clearance, taking into account up-to-date information and new public input.  In case Defendants were nevertheless maintaining their written position, this court expressly denies their summary judgment motion.  That is, the court is unpersuaded by Defendants' res judicata, waiver, and law of the case arguments.

Res judicata is simply inapplicable:

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits.  It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.

Id. at 1078 (quoting United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905 (9th Cir. 1998)).  This court previously determined that, although Mālama Mākua earlier sought to have the court declare that Defendants had violated the Settlement Agreement by not timely identifying the high priority sites for UXO clearance, Mālama Mākua could not have foreseen that Defendants would ignore currently available information in making that determination.  See Order Denying Defendants' Motion to Dismiss Complaint (Oct. 24, 2008) at 8 (ruling that Defendants had failed to establish an identity of claims).  Defendants fail to provide this court with any reason to reconsider that order. At best, Defendants attempt to characterize the present Complaint as seeking a determination that Defendants violated the public participation requirements back in 2002.  However, the court does not read the present Complaint that narrowly.  Instead, the court reads the present Complaint as asserting that, when Defendants identified the high priority sites in April 2008, they failed to comply with the public participation requirements by not seeking public input about the high priority sites based on currently available information.  Moreover, as this court noted in its earlier order, this court, in asking Mālama Mākua to file a new action every time it seeks to enforce the Settlement Agreement, did not intend for res judicata to apply.  See id. at 10-11.

18

Defendants argue that Mālama Mākua waived any right it may have had to assert the claims here because Mālama Mākua did not seek timely reconsideration of this court's March and April 2008 orders. However, the court views this action as Mālama Mākua's attempt to get this court to alter, amend, or reconsider those orders. Defendants assume, but do not establish, that this action is untimely. Had Mālama Mākua moved in Civil No. 00-00813 SOM for relief from this court's April 2008 orders under Rule 60(b) of the Federal Rules of Civil Procedure, instead of filing this action in July 2008, such a motion would have certainly been timely. Mālama Mākua's delay would have been reasonable, and the motion would have been brought within one year of the entry of the order. See F. R. Civ. P. 60(c)(1). Mālama Mākua filed the present action in light of the court's statement that the filing of a new action would help the parties focus on new issues and provide the parties with an orderly schedule for litigating the case. This court never intended to bar claims that could have been asserted in the prior action.

Law of the case is also inapplicable here. "The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990). Under this discretionary doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a

19

higher court in the identical case."  Id.  "For the doctrine to
apply, the issue in question must have been 'decided explicitly
or by necessary implication in [the] previous disposition.'"  Id.
(quoting Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 441
(9th Cir. 1982)).  The court is here clarifying what Defendants
must consider in identifying the high priority sites for UXO
clearance.  The court does not consider that issue to have been
decided in the earlier litigation such that it may not be
litigated now.

The court is also not persuaded by the equitable
estoppel argument made by Defendants in footnote 8 of their
Opposition to Mālama Mākua's motion to enforce.  Defendants
assert that, under Local Rule 60.1(c), Mālama Mākua should have
sought reconsideration of the earlier Amended Order Enforcing
2001 Settlement Agreement within 10 days of April 9, 2008.
Defendants argue that, because Mālama Mākua did not file this
action for more than sixty days, and because Defendants had
prepared and filed quarterly reports in the interim, Mālama Mākua
is estopped from bringing the present claims.  However, even
assuming Local Rule 60.1 is applicable, rather than being limited
to interlocutory orders, Mālama Mākua is not asserting that this
court's order had a manifest error of law or fact.  To the
contrary, Mālama Mākua is saying that, until Defendants
identified the high priority sites, Mālama Mākua could not have

known that Defendants would ignore currently available information and decline to seek public input based on that information.  Mālama Mākua is also claiming that, until Defendants identified the sites in their first quarterly report, Mālama Mākua did not know that Defendants would fail to focus on increasing public access to the high priority sites.

Mālama Mākua's claim is akin to a motion seeking reconsideration based on new evidence.  Such a motion does not have a ten-day reconsideration period under Local Rule 60.1.  Nor is the court persuaded that Mālama Mākua's Complaint should be treated as an untimely motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure.  Given the timing of Mālama Mākua's Complaint, it is more in the nature of a motion under Rule 60(b).  Finally, Mālama Mākua did not sleep on its rights by waiting until July 2008 to raise the issue of Defendants' compliance with all of the provisions of paragraph 8(b) of the Settlement Agreement with Defendants.  <u>See</u> Ex. O (Apr. 3, 2008, letter); Ex. P (Apr. 18, 2008, letter).

IV.    <u>CONCLUSION.</u>

For the reasons set forth above, the court orders Defendants, as set forth in their proposed Timetable filed on January 14, 2009, to take into account all information currently available in identifying high priority areas for UXO clearance. In making that identification, Defendants must comply with the

21

terms of the Settlement Agreement, including the requirements that Defendants "provide meaningful opportunities for the people of the Wai`anae Coast to participate in identifying and prioritizing these areas" and "focus on increasing access to cultural sites."

This order clarifies this court's April 2008 orders filed in Civil No. 00-00813 SOM/LEK on the subject matter at issue here.  It also denies Mālama Mākua's motion to enforce the Settlement Agreement and denies Defendants' motion for summary judgment.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 23, 2009.



 /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge


Mālama Mākua v Gates, et al., Civ. No. 08-00327 SOM/LEK; ORDER CLARIFYING REMEDY FOR DEFENDANTS' PREVIOUSLY DETERMINED BREACH OF PARAGRAPH 8(B) OF THE SETTLEMENT AGREEMENT; ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT; ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT